UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 12-cv-23629-Huck/O'Sullivan

JOSE A. GARCIA,
and all others similarly situated
under 29 U.S.C. 216(b),

      Plaintiff,

v.

KONING RESTAURANTS INTERNATIONAL,
L.C. d/b/a PIZZA HUT,

      Defendant.
_____/

## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS I AND II OF PLAINTIFF'S AMENDED COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW

Defendant, Koning Restaurants International, L.C., d/b/a Pizza Hut ("Defendant" or "Koning") pursuant to Federal Rule 56 and Local Rule 7.5 and through its undersigned counsel, hereby submits this Motion for Partial Summary Judgment as to Counts I and II of Plaintiff's Amended Complaint with Incorporated Memorandum of Law.  Defendant's Concise Statement of Undisputed Material Facts is being filed concurrently herewith.[1]

### PRELIMINARY STATEMENT

Plaintiff, Jose A. Garcia's ("Garcia"), Amended Complaint includes claims for minimum wage violations under the Fair Labor Standards Act (Count I) and common law unjust enrichment (Count II).[2]  As to Count I, Garcia contends that Koning violated the minimum wage

---

[1] Citations to Defendant's Concise Statement of Undisputed Material Facts will be "Facts ¶____".

[2] The Amended Complaint also contains a claim for retaliation (Count III); however, Defendant is not moving for summary judgment as to Count III.

provisions of the Fair Labor Standards Act ("FLSA") by failing to pay him the full minimum hourly wage of $7.25 during the relevant time period.[3]  As to Count II, Garcia contends that Koning failed to pay him the $2.75 mandatory delivery service fee that it charges to all customers who have pizza delivered.  Koning is entitled to judgment as a matter of law because neither the undisputed evidentiary record in this case nor the clear legal precedent supports Garcia's claims for minimum wage violations or unjust enrichment.

Garcia's FLSA claim in Count I must fail because he cannot prove that he worked any hours for which Koning failed to properly compensate him under the FLSA's minimum wage requirements. Koning operates several Pizza Hut restaurants throughout South Florida. [Facts ¶ 2].  Garcia worked for Koning as a pizza delivery driver. [Facts ¶ 1]. All delivery drivers, including Garcia, also perform production duties including washing dishes, cleaning the store, and cutting pizzas. [Facts ¶ 21].  The undisputed record evidence is clear that Garcia was a "tipped employee" under the FLSA and, therefore, Koning took an FLSA-approved tip credit against his wages for the tips Garcia received during each week. In fact, Garcia admitted in deposition that he received both a direct wage of $5.00 per hour and retained 100% of tips he received from Koning's customers. [Facts ¶¶ 14, 19].  On the rare occasion when Garcia did not receive sufficient tips and therefore fell below minimum wage, Koning supplemented his pay with a minimum wage guaranty. [Facts ¶ 17]. Garcia also testified that he received a full minimum wage of at least $7.25[4] when he performed production work. [Facts ¶ 22].   The facts,

---

[3] Plaintiff's original Complaint was filed on October 4, 2012. [D.E. 1].  The FLSA contains a 2-year limitations period (or 3 years for willful violations) that dates back from Plaintiff's original Complaint. *See* 29 U.S.C. § 255.

[4] Garcia was paid the applicable Florida minimum wage which exceeded minimum wage under the FLSA starting on June 1, 2011.  From June 1, 2011 to December 31, 2011, Florida's hourly

therefore, are undisputed that Garcia earned at least minimum wage because he was paid either: a $5.00 hourly wage plus tips for the hours he delivered pizzas or a minimum wage of at least $7.25 for the hours when he performed production work.

Garcia's unjust enrichment claim in Count II must fail because he cannot prove that he conferred any benefit on Koning other than performing his job duties. To the contrary, the undisputed evidentiary record is clear that Garcia never performed any work during his employment over and above the exact job duties he was hired to perform -- delivering pizzas and performing production work. [Facts ¶ 37]. Garcia testified that no one at Koning ever told him that he would receive any portion of the $2.75 delivery fee as compensation. [Facts ¶ 38].

With no factual support for his claims in Counts I and II of the Amended Complaint, Koning is entitled to judgment as a matter of law regarding these claims.

## FACTUAL BACKGROUND

### A.   Garcia's Employment Background.

Koning operates several Pizza Hut restaurants throughout South Florida. Facts ¶ 2]. Garcia was employed with Koning as a pizza delivery driver throughout his employment. [Facts ¶ 1]. Garcia always worked at Pizza Hut store #12397, which is located at 3830 Southwest Eighth Street in Miami, Florida. [Facts ¶ 3]. As with all pizza delivery drivers, Garcia was also responsible for performing necessary "production work" inside the Pizza Hut store during his shift. Production work included washing dishes, cleaning the kitchen, cleaning and organizing the store's delivery area, and cutting pizzas. [Facts ¶ 21].

---

minimum wage  was $7.31 and throughout 2012 Florida's hourly minimum wage was $7.67. *See* Fla. Const. Article I, Section 24.

### B. Garcia's Wages & Koning's Tip Policy.

Garcia worked an average of thirty (30) hours each week. His typical schedule was Wednesday through Monday and his typical shift ran between 5:00pm and 10:00pm. [Facts ¶ 4]. This litigation does not involve any issues related to overtime wages under the FLSA and Garcia has not made a claim for unpaid overtime wages in this action. Garcia's only wage-related claim here is that Koning failed to pay him the full FLSA-mandated hourly minimum wage of $7.25 per hour starting in November 2009. Prior to November 2009, Garcia received a full hourly minimum wage of $7.25 for all hours he worked for Koning. During this time period, Garcia also received both cash and credit card tips from customers. [Facts ¶ 6]. Garcia retained 100% of the tips he received from customers and was not required to share these tips with any other Koning employees. [Facts ¶ 7]. Garcia never reported these tips as income on his tax returns. [Facts ¶ 8].

In November 2009, and consistent with industry standards, Koning made the decision to change the manner in which pizza delivery drivers were compensated. [Facts ¶ 9]. Instead of receiving the full minimum wage plus tips, going forward delivery drivers would receive $5.00 per hour plus 100% of the tips they received from customers.[5] On November 15, 2009, Koning's Operations Director Elsie Davila held a meeting at store #12397, which was conducted in Spanish to explain the parameters of this new tip credit policy. All drivers, including Garcia,

---

[5] Koning did not take the full tip credit permitted under the FLSA. At that time, employers were able to pay a direct wage of $4.23 and take a tip credit of $3.02 per hour. *See* Fla. Const. Article I, Section 24. Koning paid a direct wage of $5.00 and took a tip credit of $2.25 per hour. From June 1, 2011 to December 31, 2011, Koning began taking a tip credit of $2.31 per hour and increased the tip credit amount of $2.67 per hour starting on January 1, 2012. At no point during Garcia's employment did Koning take the full $3.02 hourly tip credit. [Facts ¶ 16].

attended this meeting. [Facts ¶ 10]. Ms. Davila explained the tip credit and reviewed examples of tip credit calculations with Garcia and other drivers in his location. [Facts ¶ 11].

Koning provided Garcia and other pizza delivery drivers a written memorandum explaining that Koning would begin taking a "tip credit" effective November 24, 2009. [Facts ¶ 12]. Koning specifically explained: "You will earn the new TIP rate of $5.00 an hour, for assisting and providing delivery service to our customers." [Facts ¶ 12]. That same day, Garcia signed a position description and agreement form (which was explained to him beforehand) and confirmed:

> I understand and agree to my position duties, requirements, compensation and benefits. I also acknowledge and agree that, as of November 24, 2009, I will be paid as a Tipped Employee and earn a tip rate of $5.00 an hour while employed by Koning Restaurants International. [Facts ¶ 13].

After Koning began taking a tip credit effective November 24, 2009, Garcia began earning an hourly wage of $5.00 and continued to receive tips from customers when he worked as a driver. [Facts ¶ 14]. Even after the tip credit went into effect, Garcia retained 100% of the customer tips he received and was not required to share his tips with any other Koning employee. [Facts ¶ 7].

Koning's policy handbook contains a wage and hour compliance policy (known as "policy 501") that ensures tipped employees receive at least a guaranteed minimum wage. Under policy 501, on the rare occasions when the tips Garcia reported were not sufficient to meet the full minimum wage, Koning supplemented Garcia's wages to ensure compliance with the FLSA. [Facts ¶ 17].

For the hours he spent on production work, at all times Garcia received a full hourly minimum wage. From October 2009 until June 1, 2011, Garcia's hourly wage was $7.25. From

June 1, 2011 until December 31, 2011, Garcia's hourly wage was $7.31. Starting on January 1, 2012, Garcia's hourly wage was $7.67. [Facts ¶ 22].

Koning took additional steps to ensure that Garcia received the proper hourly wage for his actual job duties once the tip credit policy because effective. After November 24, 2009, Garcia was initially responsible for clocking out as a driver once his delivery duties were completed and clocking in as a production worker so that he could be paid the appropriate hourly wage. [Facts ¶ 23]. Koning subsequently changed its policy so that its timekeeping system automatically clocked Garcia out as a driver and clocked him in as production five (5) minutes after he returned from a delivery. [Facts ¶ 23].

      **C.**    **Koning's Delivery Service Fee & Driver Reimbursement Policies.**

Koning incurs administrative overhead attributed to the delivery service – which includes: (a) employing delivery drivers who have vehicles; (b) employing dispatchers; (c) installing a telephone and internet system capable of handling delivery order volume; (d) purchasing additional insurance coverage: (e) purchasing heated pouches to keep pizza warm; and (f) purchasing Pizza Hut signage for delivery vehicles ("Delivery Fee"). [Facts ¶ 24]. The $2.75 Delivery Fee is non-negotiable and automatically added to all customer deliveries. [Facts ¶ 25]. To ensure that Koning's customers understand the difference between the Delivery Fee and driver tips, Koning's delivery tickets expressly state: "DRIVER GRATUITY NOT INCLUDED". [Facts ¶ 26]. Similar additional statements appear on the on-line ordering and confirmation screens. [Facts ¶ 26].

Koning pays all delivery drivers (including Garcia) $1.10 per delivery as reimbursement for the drivers' out-of-pocket costs such as gas ("Reimbursement"). [Facts ¶ 27]. The Reimbursement is intended to reimburse delivery drivers for their own costs associated with

using personal vehicles for deliveries. [Facts ¶ 27]. The Reimbursement Garcia received was not additional wages. Garcia did not have to perform any additional work to receive the Reimbursement. Instead, he received an automatic $1.10 for each delivery he made, which was paid to Garcia as the end of each shift from the store's petty cash. [Facts ¶ 30].

The Reimbursement is not associated with, nor is it paid from, the Delivery Fee. To the contrary, the Delivery Fee is separate and distinct from the Reimbursement. Payment of the $1.10 Reimbursement is in no way tied to, dependent upon, or paid out of the Delivery Fee. [Facts ¶¶ 28-29].

Based on the above, the evidentiary record in this case is clear and undisputed that Garcia earned at least the FLSA-mandated minimum wage of $7.25 during the relevant time period and, therefore, is not entitled to any additional minimum wages. The evidentiary record, likewise, is clear and undisputed that Garcia did not confer any benefit upon Koning above his own job duties for which he was hired and, therefore, Koning was not unjustly enriched by charging and retaining the mandatory Delivery Fee. Accordingly, there is no genuine issue of material fact for trial and Koning is entitled to judgment as a matter of law.

## STANDARD OF REVIEW

"The Court shall grant summary if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Once Koning meets its initial burden of demonstrating that there is no disputed issue of material fact or that Garcia cannot present evidence as to an element of his claim, the burden shifts to Garcia to establish, with evidence beyond the pleadings, that a genuine issue of material fact actually exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).

Notably, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id; McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Therefore, Garcia cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Likewise, he may not rely on conclusory, self-serving, or uncorroborated allegations, legal conclusions, suspicion, conjecture, or evidence that would be inadmissible at trial. *See Scott v. K.W. Max Investments, Inc.,* 256 Fed. Appx. 244, 247 (11th Cir. 2007); *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

## ARGUMENT

### I.  KONING IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON GARCIA'S UNPAID MINIMUM WAGE CLAIM CONTAINED IN COUNT I OF THE AMENDED COMPLAINT

#### A.  FLSA Tip Credit Provisions.

The FLSA requires that employers pay employees a minimum hourly wage.[6] 29 U.S.C. § 206(a); *see also Dade County Fla. v. Alvarez,* 124 F.3d 1380, 1384 (11th Cir. 1997) (the FLSA "guarantee[s] either regular or overtime compensation for all actual work or employment"). In the case of employees who earn tips as part of the job, the FLSA allows employers to pay employees a reduced hourly wage and claim a credit against the employee's tips. *See* 29 U.S.C.

---

[6] The applicable Federal minimum wage under the FLSA is $7.25. Koning complied with both the Federal minimum wage and the higher Florida minimum wage – which ranged from $7.25 to $7.67 during the relevant time period. [Facts ¶¶ 16 & 22].

§203(m).  "[A]n employer may pay an employee a cash wage below the minimum wage (but above $2.13), so long as the employer supplements the difference with the employee's tips; this is known as an employer taking a 'tip credit'".  *Rubio v. Fuji Sushi & Teppani, Inc.,* 2013 WL 230216 (M.D. Fla. Jan. 22, 2013) (internal citations omitted); 29 C.F.R. §531.50(a).   Taking a tip credit toward the minimum wage for tipped employees[7] fully complies with the FLSA so long as employers: (1) inform employees of the FLSA's provisions relating to the tip credit; and (2) employees retain all tips received by them, except where tips are pooled among other tipped employees.  *See* 29 U.S.C. §203(m); *see also Ash v. Sambodromo,* 676 F.Supp.2d 1360, 1369 (S.D. Fla. 2009).

There is no factual issue for trial as to Garcia's FLSA minimum wage claim contained in Count I of the Amended Complaint.  Garcia does not dispute that he was a "tipped employee" within the meaning of Section 203(m) or that he regularly and customarily received more than $30 dollars in tips per month.  Garcia does not dispute that, at all times during his employment, he retained 100% of cash and credit card tips he received from Koning's customers. [Facts ¶ 7]. Garcia does not dispute that, prior to November 2009, he received a full hourly minimum wage of $7.25 for all hours he worked for Koning (plus tips).  [Facts ¶ 6].  Garcia does not dispute that, when he performed production duties, he received the full hourly wage mandated under Florida law (which exceeded the federal minimum starting on June 1, 2011).  [Facts ¶ 22].

Nevertheless, Garcia contends in the Amended Complaint and his answers to Court-ordered interrogatories that he only received $5.00 per hour starting in November 2009. [D.E. 8; D.E. 33]. Garcia also contends that Elsie Davila instructed him to report $2.67 in tips for each

---

[7] A tipped employee is one "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."  29 U.S.C. §203(t).

hour he worked regardless of whether Garcia actually earned those tips. [Facts ¶ 33]. Garcia's own deposition testimony, his pay records, and his signed acknowledgement belie these conclusory allegations and demonstrate that Garcia was *always* paid at least the minimum wage for all hours worked, even during those hours when Koning applied the tip credit. [Facts ¶¶ 6, 7, 13 & 19]. First, in November 2009, Koning made the decision to change the manner in which pizza delivery drivers were compensated. [Facts ¶ 9]. Instead of receiving the full minimum wage, going forward delivery drivers would receive $5.00 per hour plus 100% of the tips they received from customers. Garcia attended a November 15, 2009, meeting with Koning's Operations Director Elsie Davila which was conducted in Spanish. Garcia testified that Ms. Davila explained the new tip credit policy and reviewed examples of tip credit calculations with Garcia and other drivers in his location. [Facts ¶¶ 10-11].

Second, Koning informed Garcia of this policy change in writing and that the company would begin taking a "tip credit" effective November 24, 2009. [Facts ¶ 12]. Koning specifically explained: "You will earn the new TIP rate of $5.00 an hour, for assisting and providing delivery service to our customers." [Facts ¶ 12]. Third, Garcia signed a position description and agreement form (which was explained to him beforehand) acknowledging that he understood he would now receive $5.00 per hour plus tips.[8] [Facts ¶ 13]. Fourth, even after Koning instituted the tip credit, Garcia earned both his $5.00 direct hourly wage and received customer tips of which he continued to retain 100%. [Facts ¶ 14].

Fifth, in order to ensure full FLSA compliance, Koning's policy handbook contains a wage and hour compliance policy (known as "policy 501") providing tipped employees with a

---

[8] As noted above, the tip credit Koning took ranged from $2.25 to $2.67, which is lower than the maximum permissible tip credit of $3.02 per hour. [Facts ¶ 16] *See* Sect. 24, Art. X, Fla. Const.; Fla. Stat. Sect. 448.110

guaranteed minimum wage.  Under policy 501, on the rare occasion when Garcia did not receive sufficient tips and therefore fell below minimum wage, Koning supplemented his pay so that he received his full minimum wage.

In the end, Garcia admitted in deposition that his entire minimum wage claim is based on the fact that "even reporting the tips I never make the salary I used to make before." [Facts ¶ 15]. Based on the undisputed facts, however, it is clear that Garcia received at least minimum wage under the FLSA during the relevant time period.  With no facts to support his minimum wage claim, Koning is entitled to judgment as a matter of law.

## II.   KONING IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON GARCIA'S UNJUST ENRICHMENT CLAIM CONTAINED IN COUNT II OF THE AMENDED COMPLAINT

This Court has previously held that in order to prove a claim for unjust enrichment under Florida law, "a plaintiff must demonstrate: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Rionda v. HSBC Bank U.S.A.*, *N.A.,* 2010 WL 5476725, *9 (S.D. Fla. Dec. 30, 2010)  (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) (internal quotations omitted)).  Several courts within the Southern and Middle Districts of Florida have ruled that an employee cannot recover this type of equitable relief where the employee has provided his employer with <u>nothing more</u> than what he was hired to do.  *See Denarii Systems, LLC v. Arab,* 2013 WL 500826, *4 (S.D. Fla. Feb. 11, 2013); *Rionda,* 2010 WL 5476725 at *9; *Uphoff v. Wachovia Securities, LLC,* 2009 WL 5031345, *5 (S.D. Fla. Dec. 15, 2009); *Sleit v. Ricoh Corp.*, 2008 WL 4826113, *10 (M.D. Fla. Nov. 4, 2008).

In *Rionda v. HSBC Bank, U.S.A., N.A.,* this Court granted summary judgment in favor of an employer on a similar unjust enrichment claim.  The Court ruled that: "equitable relief is not

available where the plaintiff has provided a defendant with no more than that which he was hired to do and for which he was paid his salary." *Rionda,* 2010 WL 5476725 at *9 (citing and quoting *Sleit,* 2008 WL 4826113 at *10)). In *Rionda,* an employee claimed that he was entitled to payment of a discretionary bonus that was paid out after the employee was terminated. The employer had a policy that required employees to be employed on the date bonuses were paid in order to receive payment. The employer moved for summary judgment and argued that the employee was not entitled to equitable recovery because he "was paid in full for the work he was hired to complete." *Rionda,* 2010 WL 5476725 at *9. In ruling on summary judgment, the Court explained: "[i]f the Court were to grant equitable relief, it would impermissibly rewrite the terms of the employer-employee relationship." *Id.* at *10.

Garcia's unjust enrichment claim in Count II of the Amended Complaint suffers from the identical, fatal flaw as the cases above – Garcia provided Koning with nothing more than the job duties he was hired to perform and for which he was fully compensated. Garcia's unjust enrichment claim rests solely on the fact that Koning charges its customers a mandatory $2.75 Delivery Fee for each delivery made by its drivers. [D.E. 33, p. 4]. The Delivery Fee, which is intended to offset Koning's overhead, is non-negotiable and mandatory for all customer deliveries. [Facts ¶ 25]. To ensure customers do not confuse the Delivery Fee with driver tips, , Koning's delivery tickets expressly state: "DRIVER GRATUITY NOT INCLUDED". Similar additional statements appear on the on-line ordering and confirmation screens. [Facts ¶ 26].

Count II of the Amended Complaint contends that Koning distributed a portion of the Delivery Fee to Garcia, but retained a majority of the Delivery Fee. [D.E. 33, ¶¶ 16-23]. Garcia's misguided attempt to somehow link the Delivery Fee with Koning's decision to reimburse delivery drivers for their own personal costs is not supported by the evidentiary record in this

case. As noted above, the Delivery Fee is wholly separate from and unrelated to its driver reimbursement. Payment of the $1.10 Reimbursement is in no way tied to, dependent upon, or paid out of the Delivery Fee. [Facts ¶ 29]. Instead, Koning intended the Reimbursement to reimburse drivers for their own costs incurred in using personal vehicles for Koning deliveries. [Facts ¶ 27]. Even if the Reimbursement had been paid from the Delivery Fee (which is not the case), there is no legal theory upon which Koning was unjustly enriched.

There is no factual issue for trial as to Garcia's unjust enrichment claim in Count II of the Amended Complaint. Garcia himself testified that the only benefit he ever conferred on Koning was the completion of the job duties he was hired to do. [Facts ¶ 37]. Specifically, Garcia only received his Reimbursement when he completed a delivery. There were no other occasions or circumstances where Garcia received this Reimbursement. [Facts ¶¶ 27 & 37]. Because Garcia was fully compensated by Koning for the work and benefits he provided, his unjust enrichment claims must fail and Koning is entitled to summary judgment on Count II of the Amended Complaint.

Ultimately, Garcia cannot prevail on his FLSA claim because the undisputed facts unquestionably demonstrate that Garcia was properly compensated as a tipped employee. Moreover, Garcia cannot prevail on his unjust enrichment claim because the undisputed facts unquestionably demonstrate that Garcia did not confer any benefit on Koning above his own job duties. Because there are no material issues of fact, Koning is entitled to judgment as a matter of law on Counts I and II of the Amended Complaint.

## **CONCLUSION**

For the reasons set forth herein, Koning respectfully requests the Court grant its Motion for Partial Summary Judgment, dismiss Counts I and II of Garcia's Amended Complaint with prejudice, and enter judgment in favor of Koning.

Dated:  April 5, 2013                              Respectfully submitted,

/s/ Susan N. Eisenberg
Susan N. Eisenberg, Esq.
Florida Bar No. 600393
Jennifer T. Williams, Esq.
Florida Bar No. 0174203
**AKERMAN SENTERFITT**
One Southeast Third Avenue, 25th Floor
Miami, FL  33131-1714
Phone:  305.374.5600
Fax:  305.374.5095
Email:  susan.eisenberg@akerman.com
Email:  jennifer.williams@akerman.com
Counsel for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 5, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Susan N. Eisenberg
Susan N. Eisenberg

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 12-cv-23629-HUCK/O'SULLIVAN

**SERVICE LIST**

| | |
|---|---|
| J.H. Zidell, Esq. | Susan N. Eisenberg, Esquire |
| E-mail: zabogado@aol.com | E-mail: susan.eisenberg@akerman.com |
| K. David Kelly, Esq. | Jennifer T. Williams, Esquire |
| E-mail: David.Kelly38@rocketmail.com | E-mail: jennifer.williams@akerman.com |
| J.H. Zidell, P.A. | Akerman Senterfitt |
| 300 71st Street, Suite 605 | One Southeast Third Avenue, 25th Floor |
| Miami Beach, Florida 33141 | Miami, Florida 33131 |
| Telephone: (305) 865-6766 | Telephone: (305) 374-5600 |
| Facsimile: (305) 865-7167 | Facsimile: (305) 374-5095 |
| Counsel for Plaintiff | Counsel for Defendant |
| *Service by CM/ECF* | *Service by CM/ECF* |