UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-CV-23629-HUCK

JOSE A. GARCIA, and all others similarly
situated under 29 U.S.C. § 216(B),

    Plaintiff,

vs.

KONING RESTAURANTS
INTERNATIONAL, L.C. d/b/a PIZZA HUT,

    Defendant.
_____/

# ORDER

Plaintiff Jose A. Garcia ("Plaintiff"), a former Pizza Hut delivery driver, initiated this lawsuit on October 4, 2012 on behalf of himself "and all others similarly situated" against his former employer, Defendant Koning Restaurants International, L.C., d/b/a Pizza Hut ("Defendant"), pursuant to the Fair Labor Standards Act's ("FLSA") collective action provision. *See* 29 U.S.C. § 216(b). Plaintiff asserted claims for unpaid minimum wage under the FLSA (Count I), unjust enrichment under Florida law (Count II), and retaliatory firing in violation of the FLSA (Count III).

The crux of Plaintiff's claim in Count I is that, from November 24, 2009 through October 4, 2012, Defendant paid him a substandard wage of $5.00 an hour plus tips and did not sufficiently reimburse his gas expenses, thereby driving his wage even lower. In Count II, Plaintiff claims that Defendant has been unjustly enriched by not paying him the $2.75 delivery fee it charges its customers. Lastly, Plaintiff claims in Count III that Defendant fired him in retaliation for this lawsuit.

On April 5, 2013, the parties filed cross motions for partial summary judgment. Plaintiff seeks summary judgment on his minimum wage claim in Count I, arguing that Defendant is not entitled to claim a "tip credit" against its minimum wage obligations as a matter of law because Defendant did not give him sufficient notice of its intent to do so. [*See* D.E. No. 46]. Defendant, however, also seeks summary judgment on Count I. [*See* D.E. No. 48]. Defendant contends that it did comply with the FLSA's notice requirements and, thus, it is entitled to claim a "tip credit" against its minimum wage obligations as a matter of law. Defendant further argues that the

undisputed evidence shows that it reimbursed Plaintiff for more than his claimed gas expenses, thereby rendering Plaintiff's minimum wage claim meritless. Finally, Defendant also seeks summary judgment on Plaintiff's unjust enrichment claim in Count II, arguing that there is no evidence that Plaintiff conferred any benefit on Defendant beyond that which he was hired to do and for which he was already paid. Neither party seeks summary judgment on Plaintiff's retaliation claim in Count III.

For the reasons below, Defendant's Motion for Partial Summary Judgment as to Counts I and II of Plaintiff's Amended Complaint [D.E. No. 48] is GRANTED, and Plaintiff's Motion for Partial Summary Judgment [D.E. No. 46] is DENIED.

**I.     Background**

Plaintiff worked as a pizza delivery driver for Defendant's Pizza Hut store #12397 in Miami, Florida, from April 19, 1996 until he was fired on January 5, 2013. [D.E. No. 33 ¶ 27; Garcia Dep. at 13:4-21.] During his employment, Plaintiff generally worked five or six days a week, averaging about thirty hours per week. [D.E. No. 50 ¶ 4.] His typical schedule was Wednesday through Monday, with his shifts generally running from about 5:00 p.m. until 10:00 p.m. [*Id.*] Plaintiff's primary job responsibility was delivering pizzas to customers in his own vehicle. [*Id.* ¶ 18.] But he also responsible for performing "production work" inside the Pizza Hut store when he was not delivering pizzas, including cutting pizzas and assisting with general cleaning.[1] [*Id.* ¶ 21.]

**A.     Defendant Claims "Tip Credit" Against Drivers' Wages**

In November 2009, Defendant decided to change the way it compensated its delivery drivers for their delivery work. [*Id.* ¶ 9.] At that time, the federal minimum wage was $7.25 an hour. [*See* 29 U.S.C. § 206(a)(1).] Instead of continuing to pay its delivery drivers $7.25 an hour plus tips, Defendant decided to reduce their wage to $5.00 an hour plus tips—with Defendant taking a credit against its minimum wage obligations for the drivers' tips from customers. [D.E. No. 50 ¶¶ 13-14.]

On November 15, 2009, Elsie Davila, Defendant's Operations Director, held a meeting in store #12397 to explain the change in compensation to the delivery drivers. [*Id.* ¶ 10.] All of Defendant's delivery drivers, including Plaintiff, attended the meeting. [*Id.*] Because all of the store's employees speak Spanish, including Plaintiff, Ms. Davila conducted the entire meeting in Spanish. [Garcia Dep. at 10:9-16, 30:12-14, 34:11-14.]

---

[1] It is undisputed that Plaintiff was paid minimum wage for his "production work." [D.E. No. 50 ¶ 22.]

According to Plaintiff, Ms. Davila explained that, effective November 24, 2009, Defendant was going to pay its delivery drivers a cash wage of $5.00 an hour and that the rest of their minimum wage would be made up in tips. [*Id.* at 30:1-14, 39:23-40:23.] Plaintiff's former coworker, Rafael Andino, also testified that Defendant was "going to pay [them] five dollars according to the law for restaurants," and if they didn't reach the minimum wage in tips, "the company was going to supplement it." [Andino Dep. 15:23-18:12; D.E. No. 50 ¶ 17.] Plaintiff, however, did not recall Ms. Davila explaining the "tip credit" or going over calculations with him on how it would work. [Garcia Dep. at 46:12-19.] Yet according to Ms. Davila, not only did she explain the "tip credit", but she also reviewed examples of "tip credit" calculations with Plaintiff and the other delivery drivers during the meeting. [D.E. No. 50 at ¶ 11.]

Later that same day, Plaintiff signed a Position Description and Agreement Form providing, among other things, that:

> I understand and agree to my position duties, requirements, compensation and benefits. I also acknowledge and agree that, as of November 24, 2009, I will be paid as a Tipped Employee and earn a tip rate of $5.00 an hour while employed by [Defendant]. It's also important that I report all my daily tips to my employer per our company Policy Bulletin #501.

[D.E. No. 53-2 at Ex. 5.] Plaintiff signed this form only after it was explained to him, because he was "not going to sign something if I don't know what I'm signing." [Garcia Dep. at 44:21-41:5-6.] In addition, there is also evidence that Defendant had posted a Department of Labor poster explaining the "tip credit" near the employee restrooms in store #12397. [D.E. No. 59-3 ¶¶ 3-4.] But Plaintiff did not recall ever seeing the poster. [D.E. No. 49-4 at 2.]

### B. Defendant's Delivery Fee Policy

Defendant charged its customers a non-negotiable delivery fee of $2.75 for every delivery order. [D.E. No. 50 ¶ 25.] The delivery fee covered Defendant's administrative overhead costs related to the delivery service, such as employing delivery drivers who have vehicles, employing dispatchers, installing a telephone and an internet system capable of handling delivery order volume, purchasing additional insurance coverage, and purchasing heated pouches and Pizza Hut signs for the drivers' vehicles. [*Id.* ¶ 24.] To ensure that its customers understood the difference between the delivery fee and driver gratuity, the customers' receipts stated "DRIVER GRATUITY NOT INCLUDED." [*Id.* ¶ 26.]

### C. Defendant's Driver Reimbursement Policy

Defendant's delivery drivers, including Plaintiff, incurred an average of about $12 per day (or about $60 to $72 per week) in gas expenses delivering pizzas for Defendant. [D.E. No.

3

49-4, Garcia Supp. Interrog. Ans. at 2; Andino Dep. at 7:8-8:9; Battista Dep. at 10:11-23.] To cover its drivers' out-of-pocket costs, Defendant reimbursed them $1.10 per each delivery order. [D.E. No. 50 ¶ 27.] These reimbursements have no relation to the delivery fee. [*Id.* ¶ 28.]

## II.  Standard of Review

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "material" if it relates to a legal element of the claim and might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir. 1997). A dispute is "genuine" if, based on the record as a whole, a rational trier of fact may find for the non-moving party. *See Allen*, 121 F.3d at 646. "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Witter v. Delta Air Lines*, 138 F.3d 1366, 1369 (11th Cir. 1998).

The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied this burden, "the non-moving party must go beyond the pleadings to present affirmative evidence demonstrating that there is a genuine [dispute] of material fact." *Brush v. Sears Holdings Corp.*, 466 Fed. Appx. 781, 783 (11th Cir. 2012) (quoting *Anderson*, 477 U.S. at 252)). Thus, the non-moving party "may not rest upon the mere allegations or denials of his pleadings, but [] must set forth specific facts showing that there is a genuine [dispute] for trial." *Anderson*, 477 U.S. at 248. Mere "metaphysical doubt as to the material facts" will not suffice. *Ray v. Equifax Info. Servs., LLC*, 327 Fed. Appx. 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). If the non-moving party fails to make a sufficient showing on an essential element of the case, or proffers only conclusory allegations, conjecture, or evidence that is merely colorable and not significantly probative, the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 322.

## III.  Analysis

### *Count I – Unpaid Minimum Wage*

The first issue the Court will address is whether Defendant sufficiently informed Plaintiff of its intent to claim a "tip credit" against his wages under the FLSA. For the reasons below, the Court finds that there is no genuine factual dispute that Plaintiff was sufficiently informed.

### A. The FLSA "Tip Credit"

Under the FLSA, an employer must pay its employees a minimum wage. *See* 29 U.S.C. § 206(a). If an employee is a "tipped employee," that is, one who customarily and regularly receives more than $30 a month in tips, *see id.* § 203(t), the employer may factor the employee's tips into the employee's wage. *See id.* § 203(m). In other words, an employer may pay a tipped employee a cash wage below the minimum hourly wage pursuant to section 203(m), provided the employer makes up the difference with the employee's tips. This is known as an employer taking a "tip credit."

An employer "bears the burden of establishing that it is entitled to claim the 'tip credit.'" *Ash v. Sambodromo*, 676 F. Supp. 2d 1360, 1369 (S.D. Fla. 2009) (citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 646, 467 (5th Cir. 1979)); *see also Fast v. Applebee's Int'l, Inc.*, 638 F.2d 872, 882 (8th Cir. 2011); *Hermoza v. Aroma Rest., LLC*, No. 11-23026-CIV, 2012 WL 273086, *2 (S.D. Fla. Jan. 30, 2012). To meet this burden, an employer must show that (1) it has informed its tipped employees of the provisions of section 203(m), and that (2) its employees kept all of their tips, except in cases of a valid tip pooling arrangement.[2] *See* 29 U.S.C. § 203(m). If an employer fails to satisfy either of these preconditions, the tip credit "'may not be claimed, regardless of whether employees suffered actual economic harm as a result.'" *Dominguez v. Quigley's Irish Pub, Inc.*, 790 F. Supp. 2d 803, 819 (N.D. Ill. 2011) (quoting *Solis v. Min Fang Yang*, 245 Fed. Appx. 35, 28 (6th Cir. 2009)); *see also Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994).

### B. Whether Defendant Sufficiently Informed Plaintiff of the "Tip Credit"

To give sufficient notice of section 203(m), an employer must inform its employees either verbally or in writing "that it intends to treat tips as satisfying part of the employer's minimum wage obligations."[3] *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1310 (S.D. Fla. 2007) (citing *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 298 (6th Cir. 1998)); *see also Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1322 (1st Cir. 1992); *Vancamper v. Rental World, Inc.*, No. 6:10-cv-209-Orl-19KRS, 2011 WL 1230805, *5 (M.D.

---

[2] Because it is undisputed that Plaintiff was a "tipped employee" and that he kept all of his tips, the only issue here is notice.

[3] Plaintiff relies on *Nat'l Rest. Ass'n v. Solis*, 870 F. Supp. 2d 42 (D.D.C. 2012) in arguing that 29 C.F.R. § 531.59(b) imposes five specific notice requirements on an employer. As the district court concluded in *Solis*, however, section 531.59(b) "does not require employers to do anything other than what they were already obligated to do under section 3(m), which is 'inform employees of the provisions of this subsection.'" 870 F. Supp. 2d at 56 (citing 29 U.S.C. § 203(m)).

Fla. Mar. 31, 2011). But an employer does not have to give its employees a "rigorous explanation" of how the "tip credit" works; rather, "it is enough to 'inform' them of it." *Pellon*, 528 F. Supp. 2d at 1310 (citing *Chan v. Triple 8 Palace, Inc.*, No. 03-CIV-6048(GEL), 2006 WL 851749, *19 (S.D.N.Y. Mar. 30, 2006)).

For example, an employer can sufficiently inform its employees by giving them "written materials describing the employer's tip policy," *Dominguez*, 790 F. Supp. 2d at 822, or by prominently displaying a proper Department of Labor poster explaining the tip credit in the workplace, *see Pellon*, 528 F. Supp. 2d at 1310, provided the employees can read the materials or poster. *See Perez v. G & P Auto Wash Inc.*, No. 10-CV-4453(DRH)(ARL), 2013 WL 991360, *10 (E.D.N.Y. Mar. 13, 2013) (finding genuine factual dispute as to whether posters sufficiently informed employees because evidence conflicted as to whether posters contained "tip credit" information in language that plaintiffs could read); *see also Guan Ming Lin v. Benihana Nat. Corp.*, 275 F.R.D. 165, 174 (S.D.N.Y. 2011) (finding poster insufficient because it was written in English, a language that a majority of plaintiffs did not understand). "It has even been held that information conveyed through co-workers was sufficient notice." *Dominguez*, 790 F. Supp. 2d at 822 (citing *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707, 719 (N.D. Ind. 1998)).

Here, Defendant contends that it sufficiently informed Plaintiff of the "tip credit" in two ways: (1) by displaying a Department of Labor poster in its store; and (2) by explaining the "tip credit" to its delivery drivers during an in-store meeting and having Plaintiff sign a form acknowledging as much.

### 1. The Department of Labor Poster

Defendant contends that it had a proper Department of Labor poster explaining the tip credit prominently displayed near the employee restroom in store #12397. [D.E. No. 58 ¶ 1.] In doing so, Defendant relies on the declaration of its Human Resources Coordinator, Laura Fermin, who has "been employed with [Defendant] since April 2012." [D.E. No. 59-3 ¶ 2.] Her declaration states that Defendant "complies with all Department of Labor notice posting requirements," and that a "poster is displayed with all the other legally required postings near the employee restrooms" in store #12397. [*Id.* ¶¶ 3-4.] However, it does not say when or for how long the poster has been posted, much less whether it was displayed during Plaintiff's employment. The depositions of Defendant's Store Manager, Anibal Carrion, and its Operations Manager, Elsie Davila, also fail to answer these questions. [*See* Carrion Dep. at 14:22-15:10; Davila Dep. at 12:3-13:3.] This failure is significant because Plaintiff swore that "no notice

6

concerning tip credit was conspicuously posted at the [Defendant]'s place of business, that [he] could recall."[4]  [D.E. No. 49-4 at 2.]

Given that "uncertainty in the record counts against the party on those issues" it has the burden to prove, *Dominguez*, 790 F. Supp. 2d at 822, the Court finds that a genuine factual dispute exists as to whether Defendant had a Department of Labor poster explaining the "tip credit" prominently displayed in store #12397 during Plaintiff's employment.  But even if it did have one, the section of the poster explaining the "tip credit" is written only in English, a language that Plaintiff does not understand.  [D.E. No. 59-3 at Ex. A; Garcia Dep. at 10:9-14.]  Thus, Defendant's poster alone would not have sufficed to inform Plaintiff of the "tip credit." *See Perez*, 2013 WL 991360 at *10; *see also Lin*, 275 F.R.D. at 174.

### 2. In-Store Meeting & Signed Position Description and Agreement Form

Defendant also argues that it sufficiently informed Plaintiff of the "tip credit" during the in-store meeting on November 15, 2009.  Plaintiff and his coworker testified that Ms. Davila explained in Spanish that, effective November 24, 2009, Defendant was going to pay its delivery drivers a reduced cash wage of $5.00 an hour and that the rest of their minimum wage would be made up in tips.  [Garcia Dep. at 30:1-14, 39:23-40:23.]  Although Plaintiff did not recall Ms. Davila "explaining the 'tip credit'" or going over calculations on how it would work, [*id.* at 46:12-19], Ms. Davila claims that she "explained the tip credit and reviewed examples of tip credit calculations with [Plaintiff] and other drivers in his store."[5]  [D.E. No. 53-4 ¶ 6.]  She also claims that she "provided [Plaintiff] and other pizza delivery drivers a written memorandum [in English] explaining that [Defendant] would begin taking a 'tip credit' effective November 24, 2009."  [*Id.*]

---

[4] Although the district court in *Pellon* found that "a witness' statement that he 'does not recall' information contained in a poster is insufficient to refute record evidence unequivocally establishing the matter," that case is distinguishable.  528 F. Supp. 2d at 1311.  There, the plaintiffs relied on the plaintiff's testimony that he could not recall "information *contained in* the poster," not the poster itself, even though he "walk[ed] by [it] multiple times a day every day" that he worked.  *Id.* (emphasis added).  In contrast, Plaintiff here cannot recall *any* "notice concerning tip credit" being "conspicuously posted at the [Defendant]'s place of business." [D.E. No. 49-4 at 2.]

[5] Plaintiff also makes much ado about Ms. Davila allegedly instructing him to report $2.67 in tips per hour regardless of the amount of tips he actually earned.  [*See* D.E. No. 46 at 13.]  The Court agrees with Defendant, however, that this alleged fact is neither material nor supported by the record evidence because Plaintiff's Employee Check History shows that he never reported tips in increments of $2.67 an hour.  [*See* D.E. No. 58 ¶ 7.]

7

Regardless of what exactly was "explained" or what memos were handed out, it is undisputed that Plaintiff signed a Position Description and Agreement Form providing that:

> I understand and agree to my position duties, requirements, compensation and benefits. I also acknowledge and agree that, as of November 24, 2009, I will be paid as a Tipped Employee and earn a tip rate of $5.00 an hour while employed by [Defendant]. It's also important that I report all my daily tips to my employer per our company Policy Bulletin #501.[6]

[D.E. No. 53-2 at Ex. 5.] It is also undisputed that Plaintiff only signed this form after it had been explained to him because he does not "sign something if [he doesn't] know what [he's] signing." [Garcia Dep. at 41:5-6, 44:21-45:6.]

Based on this evidence, the Court concludes that there is no genuine factual dispute that Defendant sufficiently informed Plaintiff of the "tip credit." *Compare Pellon*, 528 F. Supp. 2d at 1310-11 (finding sufficient notice where employees "were orally informed that their salary would be $2.15 (or more) plus tips" and two posters concerning the tip credit were prominently displayed in the workplace) *and Guillory v. PF & B Mgmt., LP*, No. H-11-4377, 2013 WL 1181439, *3 (S.D. Tex. Feb. 27, 2013) (finding sufficient notice because all new employees received a Welcome Packet informing them of tip credit and signed a form acknowledging as much) *with Dominguez*, 790 F. Supp. 2d at 822 (finding genuine dispute as to whether employees were sufficiently informed where they denied being told that their tips would count towards the minimum wage) *and Vancamper*, 2011 WL 1230805 at *6 (finding insufficient notice where employee was merely "informed that he would receive tips in connection with his shuttle bus transportation duties, which were in addition to his regular pay").

This is not a case like *Martin v. Tango's Rest.*, 969 F.2d 1319 (1st Cir. 1992) or *Bonham v. Copper Cellar Corp.*, 476 F. Supp. 98 (E.D. Tenn. 1979), the cases on which Plaintiff relies. In *Martin*, there was no evidence that the restaurant had given any notice to its employees of either the minimum wage or tip credit. In *Bonham*, other than "vague references to conversations about the minimum wage, . . . no witness could testify to any specific conversation

---

[6] Defendant also argues that its Policy Bulletin #501 supports a finding that its delivery drivers were given sufficient notice of the "tip credit" because the policy purportedly guarantees that Defendant's drivers receive minimum wage. As evidence, Defendant has filed page 4 of the policy. [*See* D.E. No. 53-5 ¶ 7, Ex. A.] While the page is labeled "Wage & Hour/Child Labor Law Compliance," it makes no reference to either the minimum wage or the "tip credit." It thus has no bearing on the issue of notice. *Cf. Kilgore*, 160 F.3d at 299 (employer's policy was sufficient to give notice of "tip credit" where it was distributed to employees, quoted section 203(m) in full, and stated "that tips will be used as a credit against the minimum wage as permitted by federal and/or state law").

with any of the [employees]," and there was no evidence of any "program whereby relevant provisions of [section 203(m)] were explained to all employees." 476 F. Supp. 98 at 101.

In this case, however, Plaintiff and his former coworker testified that they were informed during an in-store meeting that they would be paid $5.00 per hour as a "tipped employee" and that the rest of their minimum wage would be made up in tips. Plaintiff also signed a form acknowledging as much after it had been explained to him. Contrary to Plaintiff's assertion, Defendant did not need to provide a more "rigorous explanation" of the provisions of section 203(m). *See Pellon*, 528 F. Supp. 2d at 1310. It was enough to inform Plaintiff of them. *Id.* Because there is no genuine factual dispute that Defendant did so, the Court concludes that Defendant is entitled to claim a "tip credit" against Plaintiff's wage as a matter of law. Having so concluded, the Court turns to the issue of whether Defendant paid Plaintiff minimum wage subject to its "tip credit."

### C. Whether Plaintiff Was Paid Minimum Wage

An employee claiming unpaid minimum wage "has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1964), *superseded by statute on other grounds*; *see also Etienne v. Inter-County Sec. Corp.,* 173 F.3d 1372, 1375 (11th Cir.1999). In this case, Plaintiff's own evidence shows that Defendant paid him minimum wage subject to its "tip credit,"[7] that is, $5.00 an hour plus tips totaling at least $7.25 an hour. [*See* D.E. No. 46 at 7-9.] However, Plaintiff claims that this compensation was substandard because he paid for his own gas and Defendant did not adequately reimburse him, thereby reducing his wage below the legal minimum.[8]

---

[7] Plaintiff has filed one paystub (dated June 27, 2011) that appears to show on its face that he was paid less than minimum wage during that pay period. [*See* D.E. No. 47.] Defendant, however, has filed uncontroverted evidence showing that this underpayment was intentionally made to correct an inadvertent overpayment on Plaintiff's prior paystub (dated June 13, 2011). Specifically, Defendant had mistakenly paid Plaintiff the full minimum wage for the hours he worked as a delivery driver during the prior pay period, instead of the reduced wage of $5.00 per hour. This mistake resulted in Plaintiff receiving an overpayment of $55, which Defendant corrected by deducting $55 from Plaintiff's wages during the following pay period. [*See* D.E. No. 58 ¶ 15.]

[8] To illustrate, Plaintiff's biweekly paycheck dated January 24, 2011 shows that he worked 62.24 hours, for which he was paid a cash wage of $320.45 plus $139 in tips. [*See* D.E. No. 47.] This totals a gross wage of $459.45 for that two-week pay period. When Plaintiff's gross wage is divided by the number of hours he worked, Plaintiff's hourly wage equals $7.38, which is above the federal minimum wage. However, Plaintiff claims that during that same pay period he also incurred at least $12 per day in gas expenses. Assuming Plaintiff worked ten days during that pay period, his total gas expenses would have been about $120. After deducting Plaintiff's total

According to Plaintiff, he incurred at least $12 per day in gas expenses delivering pizzas for Defendant.[9] This amounted to weekly gas expenses of about $60 to $72, depending on whether Plaintiff worked five or six days in a particular week. Although Plaintiff admits that Defendant reimbursed him $1.10 for each delivery, he insists that the total amount of these reimbursements was not enough to cover his gas expenses. As a result, Plaintiff contends that his gas expenses drove his wage below the legal minimum.

The Court is not persuaded. The problem with Plaintiff's claim is that he has not filed any evidence showing this alleged reimbursement deficit. Defendant, on the other hand, has filed unrefuted evidence showing that its total reimbursements actually exceeded Plaintiff's claimed gas expenses of $60 to $72 per week. Indeed, according to the declaration of Defendant's Chief Financial Officer, Omer Sezer, Plaintiff was reimbursed no less than $74.80 during those weeks in which he worked five days, and no less than $82.50 during those weeks in which he worked six days. [*See* D.E. No. 59-4 at Ex. A.]

Instead of controverting this evidence, Plaintiff only makes vague challenges to the declaration, arguing that it "is 'unsworn' and provides no basis for authenticity or validity, and it is suspect in that [Mr. Sezer] is apparently basing over (4) pages of spreadsheet information on his memory (with no underlying records that were kept in the ordinary course of business)." [D.E. No. 61 at 5.] Contrary to Plaintiff's contention, the declaration is sufficient evidence because it is based on personal knowledge and executed under the penalty of perjury. *See* 28 U.S.C. § 1746. Moreover, because Defendant produced sufficient sworn testimony showing that Plaintiff was adequately reimbursed, Plaintiff had the burden to come forward with evidence to refute Defendant's evidence. Because Plaintiff failed to do so, there is no genuine factual dispute that Plaintiff was paid minimum wage once his gas expenses are factored into his wage. Summary judgment is granted in favor of Defendant on Count I.

---

gas expenses from his gross wage, Plaintiff would be left with an hourly wage of $5.42 for that pay period, which is below the federal minimum wage.

[9] The Court notes that Plaintiff has not offered any breakdown or record of his gas expenses. Nor is there any evidence that he provided such information to Defendant. Instead, Plaintiff contends that Defendant should have been responsible for maintaining such records. As the district court noted in *Morangelli v. Chemed Corp.*, No. 10-CIV-0876(BMC), 2013 WL 432571, *16 (S.D.N.Y. Feb. 4, 2013), however, "it would not make sense for the FLSA to impose on an employer the obligation to keep a record when control over that record is exercised by the employee, rather than the employer." But, nonetheless, for purposes of summary judgment, the Court accepts as true Plaintiff's claim that he incurred at least $12 per day in gas expenses delivering pizzas for Defendant.

### *Count II – Unjust Enrichment*

Defendant also moves for summary judgment on Plaintiff's unjust enrichment claim in Count II, arguing that Plaintiff is essentially seeking equitable relief for nothing more than that which he was hired and paid to do—deliver pizzas. To prove a claim for unjust enrichment under Florida law, a plaintiff must demonstrate: "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009). However, "equitable relief is not available where the plaintiff has provided a defendant with no more than that which he was hired to do and for which he was paid his salary." *Rionda v. HSBC Bank U.S.A., N.A.*, No. 10-20654-CIV, 2010 WL 5476725, *9 (S.D. Fla. Dec. 30, 2010) (citations omitted); *see also Gene B. Glick Co. v. Sunshine Ready Conrete Co.*, 651 So. 2d 190, 190 (Fla. 4th DCA 1995) ("Unjust enrichment is equitable in nature and cannot exist where payment has been made for the benefit conferred.").

Here, Plaintiff claims that Defendant was unjustly enriched because it did not pay him the $2.75 delivery fee it charges its customers for deliveries. Plaintiff argues that Defendant should have paid him the entire delivery fee, instead of only reimbursing him $1.10 per delivery. Plaintiff also contends that the delivery fee negatively affected his tips because it dissuaded some customers from tipping him, even though the customers' receipts clearly state that "DRIVER GRATUITY NOT INCLUDED." [D.E. No. 50 ¶ 26.]

As Defendant points out, however, there is no evidence that Plaintiff conferred any benefit on Defendant beyond that which he was hired to do and for which he has already been paid. Even Plaintiff's Amended Complaint concedes that the alleged "benefit" Plaintiff conferred on Defendant was "perform[ing] work as a delivery driver . . . ." [D.E. No. 33 ¶ 18.] There is also no evidence that Defendant ever promised to pay Plaintiff any portion of the delivery fee. Rather, the undisputed evidence shows that the delivery fee covers Defendant's administrative overhead costs related to its delivery service and has no relation to the $1.10 reimbursements Defendant pays its delivery drivers. Finally, the mere fact that some customers may tip less (or not at all) because of the delivery fee does not support Plaintiff's claim of unjust enrichment. This is particularly true given that on those occasions when Plaintiff's tips were not enough to meet the minimum wage, Defendant made up the difference.

In sum, because the undisputed evidence shows that Plaintiff provided Defendant with no more than that which he was hired to do and for which he has already been paid, summary judgment is granted in Defendant's favor on Count II.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment as to Counts I and II of Plaintiff's Amended Complaint [D.E. No. 48] is GRANTED. Plaintiff's Motion for Partial Summary Judgment [D.E. No. 46] is DENIED.

DONE and ORDERED in Chambers at Miami, Florida, May 10, 2013.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
All counsel of record